IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT LEAL, )
)
    Petitioner, ) Case No. 3:18-cv-219
)
v. ) Magistrate Judge Patricia L. Dodge
)
FCI LORETTO WARDEN, )
)
    Respondent. )

**MEMORANDUM**[1]

For the reasons that follow, the Court will deny the petition for a writ of habeas corpus (ECF No. 9) filed by federal prisoner Robert Leal ("Petitioner") under 28 U.S.C. § 2241.

## I.    Introduction

On November 18, 2013, the United States District Court for the Northern District of Ohio sentenced Petitioner to a 100-month term of imprisonment on his conviction of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Petitioner is in the custody of the Bureau of Prisons ("BOP"). When he filed his petition he was housed at FCI Loretto, which is located within the territorial boundaries of the Western District of Pennsylvania. Therefore, although some of the events in question in this case occurred when Petitioner was housed at FCI Elkton, which is located in Lisbon, Ohio, he properly filed his petition with this Court. That is because a federal prisoner must file his § 2241 habeas petition with his custodial court, which is the federal district court in the district in which the prisoner is incarcerated. *Bruce v. Warden*

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

*Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017). The Respondent in this action is the Warden of FCI Loretto.

Petitioner raises two claims in his petition. In Claim One, he contends that his due process rights were violated during a disciplinary proceeding held at FCI Elkton in which he was found to have committed the offense of "Engaging in a Sexual Act" and lost good conduct time ("GCT") as a sanction.[2] In Claim Two, Petitioner challenges the BOP's determination that he is not eligible to receive the early-release benefit it has the discretion to provide to certain inmates under 18 U.S.C. § 3621(e)(2)(B).

Respondent has filed his answer to the petition. (ECF No. 16). Petitioner did not file a reply. *See* Local Rule 2241(D)(2) (a petitioner may file a reply within 30 days of the date the respondent files the answer).

## II.  Discussion

In order to obtain habeas relief, Petitioner has the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Section 2241 confers habeas jurisdiction upon a federal prisoner's custodial court to hear challenges to BOP decisions that potentially affect the duration of his custody, such as the claims Petitioner makes in this case. *See, e.g., Queen v. Miner*, 530 F.3d 253, 254 (3d Cir. 2008); *Barden v. Keohane*, 921 F.2d 476, 478-79 (3d Cir. 1990); *see also Dababneh v. Warden Loretto FCI*, 792 F. App'x 149, 150 n.2 (3d Cir. 2019).

---

[2] Under the BOP's disciplinary policies, there are four categories of prohibited acts: Greatest, High, Moderate, and Low. 28 C.F.R. § 541.3(a). Greatest category prohibited acts are listed in the 100 series; High category prohibited acts are listed in the 200 series; Moderate category prohibited acts are listed in the 300 series; and Low category prohibited acts are listed in the 400 series. 28 C.F.R. § 541.3, Table 1. The severity level of a prohibited act determines the possible sanction. The offense Petitioner was charged with committing, "Engaging in a Sexual Act," is in the 200 series.

### A. Claim One

#### 1. The Due Process Rights of Federal Prisoners During Disciplinary Proceedings

The Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539 (1974) is its seminal decision concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of GCT, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. *Wolff*, 418 U.S. at 556-57. The Supreme Court held that prisoners are entitled to procedures that are sufficient to ensure that the protected interest (*i.e.*, the GCT) "is not arbitrarily abrogated." *Id.* at 557. Specifically, in *Wolff* the Supreme Court held that an inmate subject to a prison disciplinary proceeding must be afforded the following due process safeguards: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges twenty-four hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rationale behind the disciplinary action. *Id.* at 563-72.

The regulations governing the conduct of BOP disciplinary proceedings are set forth at 28 C.F.R. §§ 541.1-541.8. These regulations track the requirements set forth in *Wolff*, and in some respects exceed the required process set forth in that case. The BOP's regulations pertaining to inmate discipline are further explained through Program Statement ("PS") 5270.09, which is

3

entitled Inmate Discipline Program.³

The BOP's regulations provide that a staff member shall prepare an incident report when the staff member reasonably believes an inmate has committed a prohibited act. 28 C.F.R. § 541.5(a). Another BOP staff member will investigate the report. *Id.*, § 541.5(b). Among other things, the investigator must inform the inmate of the charges against him and ask him if he would like to make a statement. *Id.*, § 541.5(b)(2).

A Unit Discipline Committee ("UDC")⁴ will review the incident report once the staff investigation is complete. An inmate is entitled to appear before the UDC during its review of the incident report, to make a statement, and to present documentary evidence. *Id.*, § 541.7(d)-(e). If the UDC finds that the inmate has committed a Moderate or Low severity offense (that is, an act in the 300 or 400 series) the UDC may impose minor sanctions. *Id.*, § 541.7(f). However, where, as was the case here, the inmate has been accused of committing a Greatest or High severity offense, the UDC must refer the charge to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.*, § 541.7(g). An inmate is to receive a written copy of the UDC's decision following its review of the incident report. *Id.*, § 541.7(h).

An inmate's rights during a DHO hearing are set forth at 28 C.F.R. § 541.8, which requires: (1) 24-hour advance written notice of a charge prior to the inmate's appearance before

---

³Full copies of the BOP's various program statements are available on its website at https://www.bop.gov. Certain BOP policies are set forth only in its program statements and are not also published in any federal regulation. In those instances, the polices are not subject to public notice and comment before adoption. Therefore, they are not entitled to the deference described in *Chevron U.S.A. v. National Resources Defense Council*, 467 U.S. 837 (1984); however, they are entitled to "some deference" from a court so long as they set forth "a permissible construction of" the statutes at issue. *Blood v. Bledsoe*, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)).

⁴While the UDC "ordinarily consists of two or more staff" designated by the warden, it may be comprised of a single individual. 28 C.F.R. § 541.7; PS 5270.09 at 23. BOP policy provides that "[o]nly one unit staff member is required to hold [the UDC] initial review when the incident report is required by policy to be referred to the DHO." PS 5270.09 at 23.

the DHO; (2) that an inmate shall be provided a staff representative at the DHO hearing, if so desired; (3) that an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; (4) that the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses (although he may submit questions for requested witnesses in writing to the DHO);and (5) that the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized. *Id.*, § 541.8(c)-(f).

The BOP's regulations explain that a staff representative may not be "a victim, witness, investigator, or otherwise significantly involved in the incident." *Id.*, § 541.8(d)(1). The role of the staff representative is described as follows:

> How the staff representative will help you. Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing. During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing.

*Id.*, § 541.8(d)(2).

Once the DHO has conducted the hearing, considered the evidence, and decided whether the inmate committed a disciplinary infraction, the DHO is required to prepare a record of the proceeding and provide it to the inmate. *Id.*, § 541.8(h). The report must be sufficient to document the advisement of the inmate's rights, the DHO's findings and decision, the evidence the DHO relied upon, and the reasons for the sanctions imposed. *Id.* As discussed in further detail below, there must be "some evidence" to support the DHO's decision to revoke GCT. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

## 2. Relevant Background

On June 1, 2017, an incident report was issued charging Petitioner with committing the offense of "Engaging in a Sexual Act." (Resp's Ex. 3A, Incident Report, ECF No. 16-5 at 2). The reporting prison official, Nurse Rhinehart, provided the following description of the incident:

> On 06/01/2017 at 0637, I was conducting pill line at the FSL. I noticed an inmate standing outside of the Health Services glass door for an extended time. The inmate was facing away from me and then turned his head around and I identified him as [Petitioner]. I continued to observe his actions.... [Petitioner's] hands were down the front of his pants, I observed his right arm moving in a back to forth motion beneath his pants. [Petitioner] was looking down the hallway acting as his own look out while he engaged in the sexual act of masturbation while peering at me. I left the pill line window at 0638 and asked PA Griffith to "come with me" to confront [Petitioner], by the time PA Griffith and I got to the Health Services sallyport door we observed [Petitioner] walking down the hallway away from Health Services. [Petitioner] is not a pill line inmate and did not sign up for sick call today.

(*Id.*)

The investigating officer delivered the incident report to Petitioner that same day and advised him of his rights. (*Id.* at 2-3). Petitioner informed the investigating officer that he had "[n]o comment." (*Id.* at 3). The investigating officer referred the incident report to the UDC for further disposition. (*Id.*)

On June 6, 2017, the UDC, which in this case was comprised of one staff member, conducted a review of the incident report. (*Id.* at 2). Petitioner was present at this review and told the UDC "the timeframes on [the incident] report are not accurate" and he requested that video from the surveillance cameras "be reviewed to prove his innocence." (*Id.*) The UDC referred the incident report to the DHO for final disposition following a hearing. (*Id.*) The UDC also advised Petitioner of his rights at the DHO hearing. (Resp's Ex. 3B, Inmate Rights at Discipline Hearing, ECF No. 16-6 at 2). At that time, Petitioner waived his right to a staff representative. (Resp's Ex. 3C, Notice of Discipline Hearing Before the DHO, ECF No. 16-7 at 2). He designated two

inmates as witnesses. (*Id.*) Petitioner maintained that they could provide statements in support of his position that Nurse Rhinehart's account should not be credited because the alleged incident could not have happened at the time she said it did. (*Id.*)

Petitioner's DHO hearing was originally scheduled to be held on June 13, 2017. (Resp's Ex. 3D, DHO Report, ECF No. 16-8 at 4). At the commencement of the hearing, Petitioner notified the DHO that he wanted a staff representative. (*Id.*) Therefore, the DHO continued the hearing. (*Id.*)

The DHO hearing reconvened on June 28, 2017. Petitioner's chosen staff representative, Correctional Counselor D. Smith, was present at the hearing. At the beginning of the hearing, the DHO informed Ms. Smith and Petitioner that a systems technician had provided him with a memorandum, dated June 9, 2017, within which the technician explained that he had checked the camera surveillance system and there was no available video footage of the relevant location for the date and time Nurse Rhinehart maintained the incident had occurred. (*Id.* at 3-4). The other documentary evidence the DHO had before him was incident report and investigation, a three-page written statement Petitioner had provided, and a memorandum from the physician's assistant who had accompanied Nurse Rhinehart in the hallway area after the alleged incident. The physician's assistant identified Petitioner as the inmate she saw when she accompanied Nurse Rhinehart. (*Id.* at 3).

Ms. Smith informed the DHO that she had no concerns with the evidence or due process. (*Id.*) She stated that although she could provide no specifics about the alleged incident, she had worked with the Petitioner in the past and he had always been respectful to her. (*Id.*)

When he spoke, Petitioner informed the DHO: "I did not do what [Nurse Rhinehart] said I did in the incident report, she is not telling the truth. I don't do things like that to female staff."

(*Id.* at 2). As mentioned above, Petitioner also submitted to the DHO a three-page written statement in which he asserted that he DHO should not credit Nurse Rhinehart's report. (*Id.* at 3).

The two inmates that Petitioner requested as witnesses provided statements to the DHO. One inmate stated: "Yes, I was standing outside health services on that date, but I was not paying attention to what [Petitioner] was doing, I was waiting to go to work outside of the FSL. I can't say if [Petitioner] did or did not do anything, I did not see anything. That is all I know about the situation." (*Id.* at 3). The other inmate stated: "No, I was not there at the time this happened. I do not know anything about what happened, I did not witness anything. That is all I can say about the situation." (*Id.*)

The DHO issued his report on August 29, 2017.[5] He explained that he considered all of the above-cited information and determined that the greater weight of the evidence supported the conclusion that Petitioner committed the offense of Engaging in a Sexual Act. The DHO explained that he considered Petitioner's verbal and written statements but he credited Nurse Rhinehart's account of the incident. (*Id.* at 4-5). In relevant part, the DHO imposed as a sanction the disallowance of 27 days of GCT and the forfeiture of 60 days of non-vested GCT. (*Id.* at 5-6).[6]

---

[5]The DHO Report contains a typographical error that incorrectly recorded the date as August 29, 2016.

[6]Petitioner asserts that the DHO assessed him too much GCT as a sanction. In his answer, Respondent explains that the BOP's regulations specifically authorize forfeiture of non-vested good conduct time up to 50% or up to 60 days, whichever is less, and the disallowance ordinarily between 25%-50% (14-27 days) of GCT credit available for a year. 28 C.F.R. § 541.3, Table 1. Therefore, Respondent explains, the DHO was authorized to impose the sanctions he did in Petitioner's case.

8

### 3. The BOP Complied With the Required Procedural Protections for Disciplinary Proceedings and the DHO's Decision Was Supported By "Some Evidence"

Petitioner has not satisfied his burden of demonstrating that his due process rights were violated during his disciplinary proceeding. He alleges he was denied evidence, specifically video footage of the relevant location on the date and time when Nurse Rhinehart stated he committed the offense. However, as the DHO advised Petitioner and Ms. Smith, there was no video footage of the incident available for any of them to review.[7] Petitioner also takes issue with the fact that he was not afforded a staff representative or allowed to call witnesses at *his UDC review*. This argument has no merit because he was not entitled to those things at his UDC review. He was entitled to them at his *DHO hearing*, and he received them at that hearing.

Petitioner further contends that he did not receive a copy of the *UDC's decision* until June 29, 2017, which was the day after the DHO conducted its hearing. Notably, there is no indication that Petitioner advised the DHO on either June 13, 2017 or June 28, 2017 that he had not yet received the UDC's decision. Nor is there any indication that Ms. Smith informed the DHO that she had not been able to review UDC's decision. In any event, the UDC's decision in this case consisted of the following single sentence: "The UDC is referring this report to the DHO due to the severity of the incident and for sanctions greater than available at the UDC level." (Resp's Ex. 3A, Incident Report § 19, ECF No. 16-5 at 2). If in fact Petitioner did not receive that "decision" until after the DHO hearing, he has not demonstrated that that amounted to a violation of his due process rights. As set forth above, *Wolff* requires only that the inmate

---

[7] To the extent that any relevant video footage had existed, FCI Elkton was not obligated to preserve it. *McKeithan v. Beard*, 322 F. App'x 194, 201 (3d Cir. 2009) ("The videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider.") (citing *Griffin v. Spratt*, 969 F.2d 16, 22 (3d Cir. 1992)).

receive a written copy of the final decisionmaker's (here, the DHO's) report. Moreover, Petitioner has not demonstrated that he suffered any prejudice.

In actuality, Petitioner's primary challenge is to the DHO's determination that he committed the offense of Engaging in a Sexual Act. It is well settled, however, that a DHO's determination is entitled to considerable deference by a reviewing court and it must be upheld as long as there is "some evidence" to support it. As the Supreme Court explained in *Superintendent v. Hill*:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.... Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.... We decline to adopt a more stringent evidentiary standard as a constitutional requirement.

472 U.S. at 455-56 (internal quotation marks and citation omitted); *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("a prison disciplinary decision need only be supported by 'some evidence' in order to satisfy due process."); *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) ("The due process requirements in this context are minimal").

Here, the DHO's decision was based upon the requisite amount of evidence necessary to survive review by a federal habeas court. Nurse Rhinehart reported that she observed Petitioner masturbating in the hallway. While Petitioner denied her account, the DHO credited her version and cited to other evidence, such as the memorandum from the physician assistant, that tended to corroborate it. The DHO also considered the statements from Petitioner's witnesses, but neither of them could provide specific testimony about his observed behavior at the time of the incident. Additionally, the DHO considered Petitioner's written and verbal testimony but found the

greater weight of the evidence support the finding that he committed the prohibited act. *Id.*

For the reason set forth above, Petitioner failed to demonstrate that his due process rights were violated during his disciplinary proceeding. Therefore, he is not entitled to habeas relief on Claim One and it is denied.

**B.     Claim Two**

   **1.     Relevant Background**

As part of its duties, the BOP is required to "make available appropriate substance abuse treatment for each prisoner [it] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, Congress amended § 3621 and vested the BOP with the authority provide certain inmates with an early-release benefit if they successfully complete its Residential Drug Abuse Program ("RDAP"). The BOP's authority is set forth at § 3621(e)(2)(B), which provides:

> **Period of custody.**–The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added).

In *Lopez v. Davis*, 531 U.S. 230 (2001), the Supreme Court agreed with the BOP that "§ 3621(e)(2)(B) establishes two prerequisites for sentence reduction: conviction of a nonviolent offense and successful completion of drug treatment. If those prerequisites are met, [the BOP] 'may,' but also may *not*, grant early release." 531 U.S. at 239 (emphasis in original). Because Congress did not address how the BOP should exercise its discretion within the class of inmates who satisfy the two statutory prerequisites, the BOP was tasked with developing criteria to determine which inmates would be eligible to receive the early-release benefit.

11

In the implementing regulation at issue in this case, 28 C.F.R. § 550.55(b), the BOP has excluded, in an exercise of its discretion, certain categories of inmates from receiving the early-release benefit. The BOP may exclude inmates categorically as long as it has interpreted § 3621(e)(2)(B) reasonably in a manner that is not arbitrary or capricious under the Administrative Procedure Act ("APA"). *Lopez*, 531 U.S. 239-40; *id.* at 242 ("In this familiar situation, where Congress has enacted a law that does not answer the precise question at issue, all we must decide is whether the [BOP], the agency empowered to administer the early release program, has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design. We think the [BOP's] interpretation is reasonable both in taking account of preconviction conduct and in making categorically exclusions.") (internal quotations and citations omitted).

Section 550.55(b) excludes numerous categories of inmates from receiving the early-release benefit. In relevant part, it provides:

> (b) Inmates not eligible for early release. *As an exercise of the Director's discretion*, the following categories of inmates are not eligible for early release:
>
> - - - -
>
> (5) Inmates who have a current felony conviction for:
>
> (i) An offense that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another;
>
> *(ii) An offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device);*
>
> *(iii) An offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another;* or
>
> (iv) An offense that, by its nature or conduct, involves sexual abuse offenses committed upon minors;

28 C.F.R. § 550.55(b)(5)(i)-(iv) (emphasis added).

Petitioner participated in the BOP's RDAP program. Therefore, the BOP, through its staff with its Designation and Sentence Computation Center ("DSCC"), was tasked with conducting an offense review to determine if he would be eligible for the early-release benefit upon completion of the program. Respondent explains that in conducting offense reviews, the DSCC legal staff examines the inmate's Judgment and Commitment file, which includes the Judgment and Commitment Order, Statement of Reasons, Pre-Sentence Investigation Report, and any other sentencing documentation that may be relevant.

The BOP completed its most recent offense review of Petitioner in October 2017. It determined that he was not eligible to receive § 3621(e)(2)(B)'s early-release benefit. (Resp's Ex. 3G, Request for § 3621(e) Offense Review, ECF No. 16-11 at 2-3). It so held because it concluded that Petitioner's conviction of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) "involved the carrying, possession, or use of a firearm or other dangerous weapon[,]" and also qualified as a crime that "by its nature or conduct, present[ed] a serious potential risk of physical force against the person or property of another[,]" thereby falling within the terms of § 550.55(b)(5)(ii) and (iii), respectively. (*Id.*)

The BOP further explained that, in addition to being precluded from the early-release benefit under its regulations, Petitioner was also prohibited from receiving it under the policy set forth in § 4(e) of PS 5162.05, which is entitled "Categorization of Offenses" and which is one of the program statements it utilizes to assist in the implementation of various programs. That policy states that an inmate convicted of an offense under 18 U.S.C. § 922(g) may not receive "certain [BOP] program benefits."

13

## 2. Discussion

In Claim Two, Petitioner contends that the BOP's determination that he would not receive the early-release benefit violated the APA. This Court has no authority to review under the APA the decision the BOP made in Petitioner's particular case. This Court is barred from doing so under 18 U.S.C. § 3625. In relevant part, § 3625 states that the APA sections governing judicial review "do not apply to the making of any determination, decision, or order under this subchapter." "This subchapter," *i.e.*, Subchapter C of the Postsentence Administration statute, includes § 3621, which, as set forth above, confers upon the BOP authority to administer the RDAP and § 3621(e)(2)(B)'s early-release benefit. *See, e.g., Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2010) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625. Accordingly, any substantive decision by the BOP to admit a particular prisoner into RDAP, *or to grant or deny a sentence reduction for completion of the program*, is not reviewable by the district court.") (emphasis added).

Although this Court has no authority to review the decision the BOP made in Petitioner's particular case, Petitioner can challenge the BOP's rulemaking, which is not barred from judicial review under § 3625. *See, e.g. Lopez*, 531 U.S. at 232-45; *Gardner v. Grandolsky*, 585 F.3d 786, 788 (3d Cir. 2009). Petitioner contends that the policy set forth in § 4(e) of PS 5162.05 is invalid because the BOP promulgated it in violation of the APA's notice and comment requirements. 5 U.S.C. § 553(b). This argument is irrelevant because the policy set forth in the program statement was just one of three independent bases cited by the BOP in support of its determination that Petitioner would not receive the early-release benefit. The other two bases cited were the regulations at § 550.55(b)(5)(ii) and (iii), which were subject to notice and

comment before they were made final. *See* 74 Fed. Reg. 1892-01 (Jan. 14, 2009). And as explained above, although Petitioner believes the BOP erred in applying those regulations to his offense conviction, § 3625 bars judicial review of the BOP's decision in that regard.

Petitioner also argues that the BOP's decision deprived him of his liberty in violation of his due process rights. This argument fails because he has no protectable liberty interest in receiving the early-release benefit following completion of the RDAP program. *See, e.g., Dababneh*, 792 F. App'x at 151 (citing *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998) (§ 3621(e)(2)(B) "allows a decisionmaker to deny the requested relief within its unfettered discretion [and] does not create a constitutionally-recognized liberty interest") and *Stephany v. Wagner*, 835 F.2d 497, 500-01 (3d Cir. 1987) (noting that a rule creates a protectable interest only when it constrains the decisionmaker's discretion)); *see also Greenholtz v. Inmates of Nebr. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Meachum v. Fano*, 427 U.S. 215, 226-28 (1976) (a statute which grants the prison administration discretion does not confer a right on an inmate). Accordingly, since Petitioner had no protected liberty interest in receiving the early-release benefit, there could be no violation of his due process rights when the BOP determined he was not entitled to receive it.

Based upon the foregoing, Petitioner has failed to demonstrate that the BOP's decision that he is precluded from receiving § 3621(e)(2)(B)'s early-release benefit violated either the APA or his right to due process. Therefore, Claim Two is denied.

## III. Conclusion

For the reasons set forth above, Petitioner is not entitled to habeas relief under § 2241 and, therefore, the Court will deny his petition (ECF No. 9).[8] An appropriate Order follows.

By the Court:

Dated: April 6, 2020

_____
PATRICIA L. DODGE
United States Magistrate Judge

---

[8] 28 U.S.C. § 2253 sets forth the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the dismissal of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. *United States v. Cepero*, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by *Gonzalez v. Thaler*, 565 U.S. 134 (2012).